THE TOWN OF ROCKINGHAM v. THE TOWN OF MOUNT HOLLY.

*Paupers. Illegitimate child, by marriage of the parents and recognition after such marriage, legitimated.*

By the provisions of the act of 1821, and also Comp. Stat. 365 § 5, if the parents of an illegitimate child intermarry, and recognize and treat such child as their own, it will render the child legitimate, the same as if born in lawful wedlock, and the child will take the settlement of the father, as one of the legal consequences resulting from such act of legitimation.

THIS was an action brought by the town of Rockingham to recover for expenses incurred by said town, in providing physician, nursing and necessaries for one Sarah J. Sweetland, who was at the time infected with the small pox.

Plea, the general issue and trial by the court.

The parties agreed upon the following statement of facts, to wit:

That Sarah J. Sweetland, the pauper, is the illegitimate child of one Jane Stevens; and Ira Sweetland, then of the town of Wallingford, being the reputed father of said child. Said Jane Stevens is the daughter of Benjamin Stevens, and was born at Quebec, Canada, in the year 1806. About the year 1807, said Benjamin Stevens came from Canada, to Vermont, and settled in the town of Rockingham, where he resided with his family until the year 1812, when he removed to Wallingford, Vermont, where he lived till about the year 1833. Said Jane Stevens lived with her father in said Wallingford till the month of February, 1829, when she left and went to the state of New York, where the said Sarah

J. was born on the 17th of May, following, after which she returned to Vermont, and was lawfully married to said Ira Sweetland, at Mount Tabor, Vermont, on or about the 10th day of July, 1829, and soon after went with the said child to live with said Sweetland, at Wallingford aforesaid, where they resided till March, 1838, when said Ira, with his family, including said Sarah J., removed to the town of Mount Holly, and resided there till March, 1852, when they again returned to Wallingford, where they now live.

It was also conceded, that said Ira Sweetland gained a legal settlement in Mount Holly, by his residence there, and that neither the said Jane Stevens, now wife of said Ira Sweetland, nor said Sarah J., ever had any settlement in said Mount Holly, except as before stated. And it was further conceded, that the said Ira Sweetland, at the time of his intermarriage with said Jane Stevens, recognized the said Sarah J. Sweetland, as his child.

The parties also agreed, if plaintiffs were entitled to recover judgment should be rendered for $——.

The County Court, September Term, 1853,—COLLAMER, J., presiding,—upon these facts, rendered judgment for the plaintiffs for the sum agreed upon, if plaintiffs were entitled to recover.

Exceptions by defendants.

*R. Washburn* and *Washburn & Marsh* for defendants.

1. The case shows, that Benjamin Stevens, the father of Jane Stevens, acquired a settlement in Wallingford, under the statute of Nov. 6, 1801.

2. Jane Stevens, the daughter of Benjamin Stevens, took the settlement of her father. Stat. of Nov. 4, 1817.

3. The case shows, that Jane Stevens' settlement at the time of the birth of her illegitimate child, Sarah J. Sweetland, was in Wallingford.

4. The said Sarah J. took the settlement of her mother, Jane Stevens, by virtue of the statute of Nov. 4, 1817.

5. The said Sarah J. did not take the settlement of her mother derived by marriage, after the birth of the said Sarah J. *Newport* v. *Derby,* 22 Vt. 553.

6. The said Sarah J. did not acquire a settlement in Mount Holly by her residence there in the family of Ira Sweetland, while a

minor, and the case shows, that she did not reside in Mount Holly after she arrived at full age, sufficient length of time to gain a legal settlement. *Hartford* v. *Hartland*, 19 Vt. 392.

7. Section 77, of the Stat. of Nov. 15, 1821, " of Probate Courts and settlements of estates," Slade's Comp. 349, it is contended, can have no application to this case. That provision of the statute, it is insisted, was designed so to legitimate, as to render the child capable of inheriting of the putative father ; and not to alter or affect the obligation or liability of towns for its support.

*Stoughton & Baxter,* for plaintiffs.

Ira Sweetland, the father of the pauper in question, gained a legal settlement in Mount Holly.

The pauper's mother by her marriage with said Sweetland, also gained a settlement in Mount Holly. Comp. Stat. Chap. 17 § 1.

By the Stat. of 1817, in force at the time of the marriage, legitimate children shall have the settlement of their parents, and *illegitimate* that of the mother. The pauper was born an illegitimate, in the State of New York, on the 17th of May, 1829, and on or about the 10th day of July, 1829, which was the time of the marriage, was recognized by the father, as his child, and since that time has resided with her parents in this state.

I. We contend that the act of recognition legitimates the child, and places her *in pari casu,* with a child born in lawful wedlock, investing her with all the rights and privileges incident and belonging to a legitimate child. *See* Act of 1821. (Slade's Comp. Stat. 349 § 77,) also, Rev. Stat. Chap. 52 § 5, and Comp. Stat. Chap. 55 § 5.

That the construction, for which we contend, is the one to be given to the statute, is obvious.—1. Because it is according to the natural and most obvious import of the language. " To legitimate," according to Webster, means, " to communicate the rights of a legitimate child to one that is illegitimate "; and in construing statutes, words are to be taken in the sense that would convey the meaning required, to all men of ordinary discernment, alike. 2. Such a construction is humane and consonant to reason and good discretion, and this is a fair test of the *intention* of the legislature. 1 Kent's Com. 462, and note.

It may be insisted that the legislature, by the act of 1821, intended simply to make a rule of *inheritance,* for the reason that

by an act passed at the following session in 1822, they provided in what manner a putative father of an illegitimate child might legitimate such child.

But it is perfectly evident, that these statutes are not conflicting, but that each has a force and meaning independent of the other, and a different application, and both have been brought down with no material alteration, to the present time, and are synonymous with Comp. Stat. § 5, 6 ; the one providing in effect, that the act of recognition after intermarriage shall remove the disabilities incurred by reason of the child being born out of wedlock, &c.; the other simply provides for the adoption of the child, and making him legitimate and capable of inheritance, as *respects such father*, &c.

II. The doctrine of derivative settlement is based on the idea of *obligation*, on the part of him through whom it is derived to support the individual.

Therefore the reason of the doctrine in *Wells* v. *Westhaven*, 5 Vt. 322, in which it was held, that a *settlement acquired* by the *mother* by a *second marriage* was not *communicated* to her children, by a former husband ; the court say, the second husband has no control over the children of the first husband, and he is not bound to support them nor entitled to their services.

In the case of a *bastard*, there is no such obligation on the part of either father or mother, which seems to us the reason of the doctrine in *Manchester* v. *Springfield*, 15 Vt. 385, *Burlington* v. *Essex*, 19 Vt. 92, *Newport* v. *Derby*, 22 Vt. 553 ;

Wherein it was held, that an illegitimate child does not take the settlement of the mother derived from her husband after the birth of such child.

In the present case, the father and mother of the child were married in less than two months after the birth of the child, and the child was then recognized by the father as his child; and it would seem to be a case where the statute should have its full beneficial operation.

The opinion of the court was delivered by

ISHAM, J.    It is conceded that Ira Sweetland had a legal settlement in the town of Mount Holly.    Jane Stevens, by her marriage with Ira Sweetland, on the 10th of July, 1829, took the set-

tlement of her husband. Slade's Stat. 381; Comp. Stat. 128. Sarah J. Sweetland, who was the illegitimate child of Jane Stevens and Ira Sweetland, derived no settlement in Mount Holly, by the marriage of her mother. *Wells* v. *Westhaven,* 5 Vt. 322. Nor has she gained a settlement in that town by residence. It is admitted, however, that at the time of the marriage of Jane Stevens with Ira Sweetland, he recognized Sarah J. Sweetland as his child. The question arises, whether by this intermarriage and recognition, Sarah J. Sweetland derived a settlement in Mount Holly. If she has derived a settlement by that act, the town are responsible for the expenses of her sickness for which this action is brought;—otherwise, this action cannot be sustained. Comp. Stat. 515 § 2.

The act of 1821, which was in force at the time of the marriage of these parties, provides, " that when a man shall have one or " more children by a woman, and shall afterwards intermarry with " such woman, such child or children, if recognized by him, *shall be* " *thereby legitimated,* and be capable of inheriting." The Comp. Stat. 365 § 5, is more specific, and provides "that the child shall be " considered legitimate *to all intents and purposes,* and be capable " of inheriting." In this latter statute, the legislature, evidently, intended to re-enact the provisions of the act of 1821, and, in the use of more specific language to give the construction which it was designed that act should receive. The intention of the legislature in the passage of that act is the rule of determination;—to ascertain which, all rules of construction are made subservient.

In Broom's Legal Maxims 247, the rule is given, " that in the " construction of statutes, one part must be so construed by another, " that the whole may stand, and if it can be prevented, *no clause,* " *sentence, or word shall be superfluous, void, or insignificant ;*— " regard is also to be had to the policy which dictated the act." If the words, "*shall be thereby legitimated,*" had been entirely omitted in the act of 1821, the intention of the legislature would be evident, clearly and naturally expressed—that the right of inheriting alone was intended. But to give that limited construction to the act, when those words are inserted, would render that whole sentence superfluous and unmeaning, and be a palpable violation of established rules of construction. It would also contravene the policy which dictated the act, to limit its operation to the right of in-

heriting property. The parents, by their subsequent intermarriage, and their recognition of the child as their own, have done every act within their power to efface the injury, and atone for the offence. Under those circumstances, the legislature intended to make the child legitimate, and to place the child on the footing of those born in lawful wedlock. They designed to efface the evidences of that transgression, by removing the incapacities that rested upon their offspring. In giving this construction to the act we give to the words, " shall be thereby legitimated," an appropriate meaning, and to all the words of the act, their ordinary signification, and enforce between those persons the relative duties of parent and child.

We are led more readily to this construction of the act of 1821, from the provisions of the act passed in 1822, in relation to the adoption of a child by its putative father. Slade's Stat. 358, No. 2. That act provides, that when a child is adopted according to its provisions, " such child shall thereafter be considered, *as re-" spects such father*, legitimate, and be capable of inheritance." The effect of such legitimation is expressly limited to the father, and therefore, may be disaffirmed by the child within one year after coming of age. Every legal consequence, that results from that act of adoption, so far as it may effect others, is expressly cut off by that limitation. It is a reasonable inference, therefore, that a legitimation for every purpose was intended under the act of 1821, with all its legal consequences, as no limitation of its effect is made in the act. We think, therefore, that the marriage of these parents and their recognition of Sarah J. Sweetland, as their child, rendered her legitimate, the same as if born in lawful wedlock. A derivative settlement in the town of Mount Holly from her father, is one of the legal consequences, that results from that act of legitimation.

The judgment of the County Court is affirmed.